## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

REGINA WILLIAMS a/k/a            )
REGINA MCCORD D/B/A              )
THERE 4 YOU, INC.,              )
                                )
          Plaintiff,            )
                                )          CIVIL ACTION
v.                              )
                                )          No. 11-CV-2408-KHV
PETER JAUDEGIS,                 )
SANDY MCKINZIE,                 )
MICHAEL GROCHOWSKI and          )
MARLA HOWARD,                   )
          Defendants.           )
_____)

## MEMORANDUM AND ORDER

Regina Williams a/k/a Regina McCord, doing business as There 4 You, Inc., brings suit under

Bivens v. Six Unknown Drug Agents, 403 U.S. 388 (1971), against employees and officials of the Social

Security Administration ("SSA").  Plaintiff claims that defendants (1) terminated her status as an SSA

representative payee in retaliation for her exercise of First Amendment rights to free speech (Count 1)

and (2) deprived her of her liberty interest in her good name and reputation in violation of her

Fourteenth Amendment rights to due process (Count 2).[1]  This matter is before the Court on Defendants'

Motion To Dismiss Or, In The Alternative, For Summary Judgment (Doc. #6) filed January 11, 2012.

Defendants assert that they are entitled to dismissal because sovereign immunity bars plaintiff's claims

for damages against them in their official capacities.  As to the individual capacity claims, defendants

assert that the complaint fails to state a claim.  In the alternative, they argue that they are entitled to

qualified immunity.  For reasons set forth below, the Court finds that defendants' motion to dismiss

---

[1]      The complaint also alleges that defendants deprived plaintiff of her property interest
in a representative payee contract in violation of her Fourteenth Amendment rights to due process
(Count 3) and her right to procedural due process (Count 4).  In response to defendants' motion to
dismiss or in the alternative for summary judgment, plaintiff asks to dismiss without prejudice her
claims in Count 3 and Count 4.  Defendants do not oppose this request.  The Court therefore dismisses
Counts 3 and 4.

should be sustained.

## Legal Standards

A.    <u>Motion To Dismiss</u>

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.,

the Court assumes as true all well pleaded factual allegations and determines whether they plausibly give

rise to an entitlement of relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  To survive a motion to

dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible – and not

merely conceivable – on its face.  <u>See id.</u>; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The

Court draws on its judicial experience and common sense to determine whether a complaint states a

plausible claim for relief.  <u>Iqbal</u>, 556 U.S. at 679.

Generally, the Court may not look beyond the four corners of the complaint when deciding a

Rule 12(b)(6) motion to dismiss.  <u>Lassiter v. Topeka Unified Sch. Dist. No. 501</u>, 347 F. Supp. 2d 1033,

1040 (D. Kan. 2004).  The Court may, however, consider indisputably authentic copies of documents

if plaintiff referred to them in the complaint and the documents are central to the claims.  <u>See Jacobsen</u>

<u>v. Deseret Book Co.</u>, 287 F.3d 936, 941 (10th Cir. 2002); <u>GFF Corp. v. Associated Wholesale Grocers,</u>

<u>Inc.</u>, 130 F.3d 1381, 1384 (10th Cir. 1997).

The Court does not accept as true those allegations which state only legal conclusions.  <u>Iqbal</u>,

556 U.S. at 679.  Plaintiff bears the burden to frame her complaint with enough factual matter to suggest

that she is entitled to relief; a threadbare recitation of the elements of a cause of action supported by

labels and conclusions without further factual enhancement is not enough.  <u>Id.</u> at 678.  To be facially

plausible, plaintiff's complaint must contain factual content from which the Court can reasonably infer

that defendants are liable for the misconduct she alleges.  <u>Id.</u>  Thus, plaintiff must show more than a

sheer possibility that defendants have acted unlawfully, and must plead facts that are more than "merely consistent" with liability.  Id. (citing Twombly, 550 U.S. at 557).  Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief.  556 U.S. at 679.  The degree of specificity required to establish plausibility is context-specific because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends upon the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

B.    Qualified Immunity

        Qualified immunity shields government officials from individual capacity liability for performing discretionary acts so long as their conduct does not violate clearly-established statutory or constitutional rights about which a reasonable person would know.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts.  See Mitchell v. Forsyth, 472 U.S. 511, 526–27 (1985). The doctrine of qualified immunity serves the goals of protecting officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.  Butz v. Economou, 438 U.S. 478, 506 (1978).  To survive a qualified immunity defense, plaintiff must allege that defendants either (1) personally participated in the alleged constitutional violation, Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011), or (2) in a supervisory capacity, created, promulgated or implemented a policy which deprived plaintiff of her constitutional rights, acting with the state of mind required to establish the alleged constitutional deprivation, Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010).

        To analyze a qualified immunity defense in a motion to dismiss, the Court considers whether plaintiff has alleged facts which make out a violation of a constitutional right, and whether the right at

issue was clearly established at the time of defendants' alleged misconduct. Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011). Whether a right is "clearly established" is an objective test: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. Id. The complaint must make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state. Montoya, 662 F.3d at 1163.

### Regulatory Background[2]

If the SSA determines that a beneficiary should not receive direct payments, it may appoint a qualified individual or organization as a representative payee. 42 U.S.C. § 405(j); 20 C.F.R. §§ 404.2001(a), 404.2010, 416.601(a), 416.610 (SSA may pay benefits to representative payee if beneficiary legally incompetent or mentally incapable of managing benefits, physically incapable of managing benefit payments, under age 18, or if drug or alcohol addiction contributes to disability). The representative payee must segregate benefits from the payee's own funds and must notify the SSA of changes in the beneficiary's circumstances. Representative payees must account for the use of beneficiaries' funds. See 42 U.S.C. §§ 405(j)(3)(A) and 1383(a)(2)(C)(I); 20 C.F.R. §§ 404.2035,

---

[2]       The Court takes judicial notice of the relevant SSA rules and regulations. See Skogen v. City of Overland Park, No. 08-2657-DJW, 2010 WL 973375, at * 2 n.16 (D. Kan. Mar. 16, 2010) (citing Baxter v. Samples, No. 08-cv-00620-CBS-KMT, 2009 WL 2242252, at *8 (D. Colo., July 22, 2009) (taking judicial notice of Bureau of Prison administrative procedures on Rule 12(b)(6) motion to dismiss)).

404.2065, 416.635, and 416.665.

The SSA monitors representative payees' accounting reports to determine whether representative payees are properly using beneficiary benefit payments.  See 42 U.S.C. § 405(j)(3)(A).  The SSA requires payees to submit annual reports and also conducts routine audits of every representative payee every three years.  See 20 C.F.R. §§ 404.2025, 416.625.  The representative payee must make accounting records available at the agency's request.  See 20 C.F.R. §§ 404.2065, 416.665.

### Facts[3]

Plaintiff is the principal of There 4 You, Inc., a registered 501(c)(3) corporation which operates in the Kansas City, Kansas area.  Beginning in April of 2007, the SSA appointed plaintiff as an organizational representative payee through There 4 You.

During the times relevant to this case, all four defendants worked for the SSA.  Michael W. Grochowski was the SSA Regional Commissioner for Region 7, which includes the Kansas City, Kansas area.  Grochowski directed the SSA officials in Region 7 regarding appointments and termination of representative payees.  Peter Jaudegis managed the SSA Field Office in Kansas City, Kansas.  Jaudegis determined the duties and responsibilities of organizational representative payees and approved and terminated the appointments of organizational representative payees.  Sandra McKinzie was an SSA representative with authority to monitor, investigate and determine if organizational representative

---

[3]        The Court sets forth the facts alleged in the complaint as supplemented by documents to which the complaint refers and which are central to plaintiff's claims.  See, e.g., Defendants' Exhibit 2, McKinzie letter, April 28, 2010; Defendants' Exhibit 3, Jaudegis letter, October 26, 2010; Defendant's Exhibit 5, Jaudegis letter, November 17, 2010.  See Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008) (on motion to dismiss, court can consider materials referenced in complaint); GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997) (on motion to dismiss, court may consider indisputably authentic copy of document referred to in, but not attached to, complaint and central to plaintiff's claim).  Plaintiff does not dispute the authenticity of these documents.

payees properly managed beneficiaries' funds.  Marla Howard was a Service Representative for SSA with authority to receive and process accountings, reports and other information from representative payees and to communicate with beneficiaries regarding their representative payees.  At all relevant times, defendants were acting in their official capacities within the scope of their duties and employment.   In January of 2007, Mark Sparks, then District Manager of the Kansas City, Kansas SSA District Office, terminated Lisa Wallace from her job as a Service Representative.  On July 8, 2008, Wallace filed a lawsuit in this Court, claiming that Sparks had unlawfully terminated her employment in retaliation for her serving as a witness for a fellow employee in a discrimination suit against Sparks and others.  In September of 2010, Wallace settled her discrimination lawsuit against the SSA.

Meanwhile, in June of 2007, Wallace sent a letter to then-Congressman Dennis Moore, asserting that Sparks, Elaine Pettiford and other staff in the SSA Field Office in Kansas City, Kansas had refused to stop Hetti Pous, a representative payee, from mismanaging and misappropriating the funds of Social Security beneficiaries.  The letter alleged that Pous had failed to (1) pay a beneficiary's rent (resulting in eviction), (2) pay beneficiaries' utilities and other living expenses and (3) report that a beneficiary was confined to a mental institution while she continued to collect his beneficiary check.  With regard to plaintiff, Wallace's letter stated as follows:

> Two dozen of Ms. Pous' former clients have asked for services with a new payee organization called There for [sic] You, Inc.  The director is Regina Williams.  She has been bombarded by these former clients who insist that their money was misused by both Hetti Pous and Social Security Administration for knowing what was going on and allowing it to continue because they did not want to take the time to bother with these people and their issues.  Hetti Pous continues to be payee for over 100 individuals throughout the Kansas City area.
>
> For verification and evidence of the allegations I have made[,] please contact Regina Williams, Director of There For [sic] You, Inc. at [telephone number] and Hetti Pous, Director of Safekeeping, Inc. at  [telephone number].  They should both have detailed

-6-

records of their accountings on these clients.

Doc. #1-1 at 3.[4]

In April of 2010, McKinzie audited plaintiff's accounting records for beneficiaries' funds. McKinzie reported that plaintiff had not maintained copies of bank statements and cancelled checks reflecting disbursements and deposits of beneficiaries' funds.[5] McKinzie's audit report also stated that two beneficiaries had negative balances in their accounts and that plaintiff had used other beneficiaries' funds to pay monthly expenses for them. The negative balances occurred because the SSA was late in depositing the beneficiaries' benefit checks into their checking accounts. Plaintiff used funds from other beneficiaries to pay rent and utilities for those with negative balances so as not to risk termination of beneficiaries' utilities or eviction. When SSA deposited the delayed checks, plaintiff immediately repaid the beneficiaries from whom she had borrowed funds.

After the audit, McKinzie directed plaintiff not to maintain a negative balance on any account and not to use one beneficiary's funds to pay another beneficiary's monthly expenses. She also directed plaintiff to maintain copies of all bank statements and cancelled checks for each account. In April of 2010, McKinzie did not recommend that the SSA take any corrective action against plaintiff for the reported deficiencies in her management of the beneficiaries' funds. In April of 2010, McKinzie did not find that plaintiff had mismanaged or misappropriated such funds.

On September 27, 2010 – shortly after Wallace had settled her lawsuit against SSA – Jaudegis directed McKinzie to conduct another audit review of plaintiff's management of her beneficiaries'

[4]     Plaintiff had given Wallace information about misuse and mismanagement of beneficiary funds.

[5]     Plaintiff maintained a ledger for each beneficiary with check numbers and dates for all disbursements and dates of each deposit.

-7-

funds. McKinzie conducted the audit and reported that plaintiff had not kept beneficiaries' records and managed the beneficiaries' funds as McKinzie had directed after the audit in April of 2010. In fact, after the audit in April, plaintiff did not maintain a negative balance in any beneficiary's account or use any funds from one beneficiary to pay the expenses of another beneficiary with a negative account balance. Furthermore, after the April audit, plaintiff had maintained copies of cancelled checks and bank statements reflecting disbursements and deposits of the funds deposited on behalf of all beneficiaries.[6] In the audit in September of 2010, McKinzie falsely reported that plaintiff did not credit monthly benefits to the individual ledgers for the beneficiaries. McKinzie further falsely reported that plaintiff did not notify SSA of changes in living arrangements for beneficiaries.

On October 28, 2010, based upon the September 2010 audit review, Jaudegis terminated plaintiff's appointment as representative payee. Jaudegis directed plaintiff to return all beneficiary funds to SSA and stated that SSA would refer her beneficiaries to another representative payee.[7] Plaintiff returned the funds in her custody, and provided a full accounting of the funds to the SSA department designated to receive those funds.

After the SSA terminated plaintiff's appointment, McKinzie contacted plaintiff's beneficiaries

---

[6]     Although plaintiff had maintained receipts for purchases by the beneficiaries from the monthly allowances which plaintiff disbursed to the beneficiaries, the regulations and guidelines did not require her to do so.

[7]     In a letter dated October 26, 2010, the SSA stated that it had determined that plaintiff had not kept adequate records and bank reconciliations for most of the beneficiaries reviewed in April and September of 2010. The SSA stated that plaintiff had not implemented the required changes to her recordkeeping procedures. The SSA specifically noted a series of deficiencies in plaintiff's recordkeeping and management of funds on behalf of beneficiaries, including "more than one beneficiary who had a negative balance and/or used someone else's funds to pay for monthly expenses," an uncashed check with an unreconciled bank statement, a deposit not credited to an individual ledger, lack of receipts and excess resources for beneficiaries.

and asked them about how plaintiff had managed their funds. Plaintiff's beneficiaries told McKinzie that plaintiff had paid all of their living expenses and other needs with their funds. McKinzie falsely informed the beneficiaries that plaintiff was under investigation for misusing and misappropriating beneficiary funds. Plaintiff alleges that she had disbursed the beneficiaries' funds solely to meet the living needs of the beneficiaries in accordance with the regulations and guidelines.

After the SSA terminated plaintiff's appointment as a representative payee, McKinzie told McKinzie's husband – who in turn told others – that the SSA had terminated plaintiff as a representative payee. Further, Howard told plaintiff's former beneficiaries that the SSA had terminated plaintiff as a representative payee because plaintiff had misused and misappropriated beneficiaries' funds, all of which was totally false.

On November 1, 2010, plaintiff asked Grochowski for a hearing so that she could contest the termination of her appointment as a representative payee. Grochowski declined to grant plaintiff a hearing and opportunity to contest the termination of her appointment. He thus approved and ratified the termination. See Complaint, Exhibit 2.

## ANALYSIS

Plaintiff claims that defendants (1) terminated her status as an SSA representative payee in retaliation for her exercise of First Amendment rights to free speech (Count 1) and (2) deprived her of her liberty interest in her good name and reputation in violation of her Fourteenth Amendment rights to due process (Count 2). Defendants assert that to the extent that plaintiff sues them in their official capacities, sovereign immunity bars her claims. Defendants move to dismiss plaintiff's claims against them in their individual capacities for failure to state a claim and because they are entitled to qualified immunity. In the alternative, defendants assert that they are entitled to summary judgment.

**Official Capacity Claims**

Subject Matter Jurisdiction

Defendants assert that the doctrine of sovereign immunity bars plaintiff's claims against them in their official capacities.[8]  The principle of sovereign immunity means that the United States cannot be sued without its consent.  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jacks, 960 F.2d 911, 913 (10th Cir. 1992).  The federal courts lack subject matter jurisdiction over claims against the United States for which it has not waived sovereign immunity.  Iowa Tribe of Kan. & Neb. v. Salazar, 607 F.3d 1225, 1232 (10th Cir. 2010).  Even when the United States is not a named defendant, a claim is against the United States if "the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States" or by an agency of the United States.  Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989) (per curiam).

Defendants note that the complaint alleges that each named defendant was an SSA Regional Commissioner (Grochowski), Field Office Manager (Jaudegis) or Representative (McKinzie and Howard) and was "acting officially and individually within the scope of [his or her] duties and

---

[8]      The complaint states that this Court has jurisdiction under 28 U.S.C. §§1331, 1343 and 2201 and Bivens v. Six Unknown Drug Agents, 403 U.S. 388 (1971).  The Tenth Circuit has held, however, that general jurisdictional statutes such as 28 U.S.C. § 1331 do not waive sovereign immunity.  See Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Lonsdale v. United States, 919 F.2d 1440, 1444 (10th Cir. 1990).  Likewise, 28 U.S.C. § 1343 – which covers actions taken under state law or conspiracies by private persons which violate civil rights – does not apply to actions taken by federal officials pursuant to federal law.  See Meuli v. United States, No. 11-1044-RDR, 2011 WL 2650355, at *4 (D. Kan. July 6, 2011) (citing Salazar v. Heckler, 787 F.2d 527, 528–29 (10th Cir. 1986)) (§ 1343(a)(4) not waiver of sovereign immunity).  Finally, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., does not provide a federal court an independent basis for exercising subject matter jurisdiction.  See Gaar v. Quirk, 86 F.3d 451, 453 (5th Cir. 1996) (petition for declaratory judgment concerning federal law not sufficient to create federal jurisdiction; relevant cause of action must arise under other federal law).

employment, under color and authority of federal law, and in an official capacity as an employee for SSA."  Defendants assert that the gist of plaintiff's complaint is that defendants in their official capacities violated her constitutional rights.  Defendants correctly point out that sovereign immunity bars such claims to the extent that plaintiff seeks damages.  See Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001) ("no such animal" as Bivens suit against public official tortfeasor in his or her official capacity).

In response, plaintiff asserts that she does not bring any official capacity claims, and asks the Court to grant her leave to amend the complaint "to delete the references that defendants were acting in their official capacities and state simply that defendants were acting in their individual capacities under color of federal authority of law in accordance with the Bivens decision."  Plaintiff's Response Brief (Doc. #15) filed February 18, 2012, at 5.  The Court deems the complaint so amended.[9]

## II.   **Individual Capacity Claims**

Defendants assert that they are entitled to dismissal of plaintiff's Bivens claims because the facts set out in the complaint (as supplemented by materials integral to the complaint) do not allege a violation of the First or Fourteenth Amendment.

### A.   **First Amendment Retaliation**

The First Amendment bars retaliation for protected speech.  Crawford–El v. Britton, 523 U.S. 574, 592 (1998); see also Wilkie v. Robbins, 551 U.S. 537, 555 (2007) (noting "longstanding recognition that the Government may not retaliate for exercising First Amendment speech rights").

---

[9]      Defendants do not address plaintiff's claims against defendants in their official capacities  for declaratory or injunctive relief, and the Court notes that sovereign immunity does not bar such claims.  Because plaintiff has asked to amend the complaint to assert only individual capacity claims, however, no such claims remain in the case.

Whether particular speech is protected depends on the nature of the expression as well as the speaker's relationship to the government, and the speech of a private citizen generally enjoys broader protection than the speech of public employees or contractors.  See Glover v. Mabrey, No. 08-7048, 2010 WL 2563032, at *4 (10th Cir. June 28, 2010).

Plaintiff's status as a representative payee does not constitute an employment or contractual relationship.  See Fryer v. Astrue, No.  1:10-cv-62, 2011 WL 1483922, at *1 n.1 (S.D. Ohio Feb. 22, 2011); Guzman v. Comm'r of Soc. Sec., 182 F. Supp. 2d 216, 219-21 (D. P.R. 2002).  Absent an employment or contractual relationship between the parties, plaintiff must plausibly allege that (1) she engaged in constitutionally protected activity; (2) defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendants' adverse action was substantially motivated as a response to plaintiff's exercise of constitutionally protected conduct.  See Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1165 (10th Cir. 2009). Defendants' motion focuses in particular on the first element.

### 1.        Constitutionally protected activity

Defendants argue that the complaint does not allege that plaintiff engaged in any protected speech.  To evaluate a First Amendment retaliation claim, the Court must first "identify the speech which resulted in the alleged retaliation."  Hulen v. Yates, 322 F.3d 1229, 1237 (10th Cir. 2003). The Court must also determine whether plaintiff's purported speech was protected.  See Connick v. Myers, 461 U.S. 138, 150 n.10 (1983) (courts obligated to examine statements in issue and circumstances under which made to see whether of character which First Amendment protects; courts cannot avoid making independent constitutional judgment on facts of case).  This is a purely legal inquiry.  See id. at 148 n.7.

Here, the only speech which plaintiff identifies is contained in a letter which Lisa Wallace (a former SSA employee) wrote to then-Congressman Dennis Moore in June of 2007.  The complaint does not allege that plaintiff wrote, signed or endorsed the letter.  Further, the letter simply identified plaintiff as someone with knowledge of alleged mismanagement by another organizational payee and by SSA officials.  Wallace's letter was not speech by plaintiff, and without such speech plaintiff has not alleged a claim for First Amendment retaliation.  See Chladek v. Verizon N.Y., Inc., 96 Fed. Appx. 19, 21-22 (2d Cir. 2004) (to survive dismissal, plaintiff asserting First Amendment retaliation claim must advance non-conclusory allegations that speech or conduct was protected).  The Court therefore finds that defendants' motion to dismiss plaintiff's First Amendment retaliation claim should be sustained.[10]

### B.      Fourteenth Amendment Liberty Interest

Plaintiff also alleges that defendants deprived her of a liberty interest in her good name and reputation in violation of her right to due process.  Defendants assert that plaintiff's allegations are insufficient to state a claim for deprivation of such a liberty interest because federal courts do not recognize such claims for damage to reputation alone.

The Tenth Circuit has explained as follows:

Where a person's good name, reputation, honor, or integrity is at stake because of what

---

[10]      Defendants also argue that plaintiff's complaint does not allege facts which if true demonstrate that her alleged First Amendment activities were a substantial motivating factor in the decision to terminate her status as an organizational payee.  Plaintiff seeks to establish a retaliatory motive by linking the letter that Wallace wrote to Congressman Moore in 2007 to findings from the audit in September of 2010 and plaintiff's termination as a representative payee in October of 2010. Defendants argue that any inference of retaliatory motive is undermined by the three-year gap between Wallace's letter and the alleged retaliation.  See Cypert v. Indep. Sch. Dist. No. I-050 of Osage Cnty., 661 F.3d 477, 484 (10th Cir. 2011) (in summary judgment context, time lapse exceeding three months insufficient to establish causation by temporal proximity alone).  Because plaintiff has not alleged any protected speech, however, she cannot show that defendants' actions were substantially motivated by protected speech.

the government is doing to [her], a protect[ed] liberty interest may be implicated that requires procedural due process in the form of a hearing to clear [her] name.  Damage to one's reputation alone, however, is not enough to implicate due process protections.  See Paul v. Davis, 424 U.S. 693, 701 (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); McGhee v. Draper, 639 F.2d 639, 643 (10th Cir.1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").

Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her good name, reputation, honor, or integrity, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law."  This is sometimes described as the "stigma plus" standard.

Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004); see also Hall v. Kan. Comm'n On Veterans Affairs, No. 11-2569-JWL, 2012 WL 1194331, at *6 (D. Kan. April 9, 2012).

Here, defendants argue that plaintiff has not alleged the violation of a constitutional right because she has not alleged the "plus" part of the "stigma plus" standard.  Defendants point out that the complaint does not allege any harm to a tangible interest, and does not allege with any specificity that defendants' statements foreclosed any other opportunities for employment or contractual relationships.  Rather, the complaint alleges in a conclusory manner that defendants "by their actions foreclosed [p]laintiff from serving as fiduciary or holding any employment position of trust."  Complaint (Doc. #1) at 12.  In response, plaintiff states that the alleged false statements have foreclosed and will continue to foreclose her from pursuing other employment opportunities and will preclude her from securing a fidelity bond.  Defendants reply that the Tenth Circuit has emphasized that allegations of speculative future harm are too intangible to constitute a deprivation of a liberty interest.  See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1268–69 (10th Cir. 1989) (allegations that newspaper articles placed

"defamatory cloud" over "employment opportunities" insufficient to state claim for violation of liberty interest under Section 1983; plaintiff's "existing legal rights" must be significantly altered before claim arises). Plaintiff has not alleged how defendants' actions have actually foreclosed other opportunities for employment or fiduciary responsibility. The Court therefore finds that plaintiff's liberty interest claims should be dismissed.[11]

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Dismiss Or, In The Alternative, For Summary Judgment</u> (Doc. #6) filed January 11, 2012 be and hereby is **SUSTAINED**. Plaintiff's claims in Counts 1 and 2 shall be and hereby are dismissed with prejudice. Plaintiff's claims in Counts 3 and 4 are dismissed without prejudice.

Dated this 5th day of September, 2012 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

---

[11]     Alternatively, defendants assert that even if plaintiff set out a First or Fourteenth Amendment violation, the Court should not extend <u>Bivens</u> liability to her claims and that in any event, defendants are entitled to qualified immunity. In <u>Bivens</u>, the Court held that the victim of an alleged Fourth Amendment violation could bring suit to recover damages under 28 U.S.C. § 1331 where there were no apparent alternative remedies and "no special factors counseling hesitation in the absence of affirmative action by Congress" were present. 403 U.S. at 396. Since <u>Bivens</u>, the Supreme Court has recognized only two additional <u>Bivens</u> remedies: one for employment discrimination against a congressional employee in violation of the Due Process clause, <u>Davis v. Passman</u>, 442 U.S. 228, 235 (1979), and another for an Eighth Amendment violation by prison officials, <u>Carlson v. Green</u>, 446 U.S. 14, 23-24 (1980). Further, the Supreme Court has explicitly refused to extend <u>Bivens</u> remedies in many contexts including denials of Social Security benefits, <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988); violations of federal employee's First Amendment rights by their employers, <u>Bush v. Lucas</u>, 462 U.S. 367 (1983); and decisions by federal agencies, <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 484 (1994). <u>See</u> <u>Davis v. Billington</u>, 681 F.3d 377, 381 (D.C. 2012); <u>cf.</u> <u>Iqbal</u>, 556 U.S. at 675 (assuming without deciding that respondent's claim was actionable under <u>Bivens</u>) (noting "concept of 'special factors counseling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction [in providing a statutory remedy in a particular circumstance] has not been inadvertent.").